Good morning, Your Honors. Good morning. My name is Steve Sanders, and I'm here for Victor Trillo. And I begin by saying that Mr. Trillo contends that it is the prosecutor or the prosecution in his case so infected his trial with misconduct that it violated his due process under Darden, and that is a right to a fair trial. If you look at the Darden factors, Mr. Trillo meets them. The prosecutor manipulated the evidence, we feel, and we feel we've explained that in the briefs. Trillo never conspired with anybody to concoct a defense, like was asserted. Trillo never claimed he was not stabbed. And Trillo never took off his shirt. And then defense counsel did not invite these errors. These were voluntarily given by the DA or the prosecution. Also, if we look at the Berger case, we can understand that these acts by the prosecutor were acts that are described as foul blows. They went beyond the pale of impeachment, that these were blows that were meant to cause fear and to intimidate the jury. Fear plays a big role in this case, Your Honors. Kennedy, are you talking about where the jurors are going to be sorry if they convict him because their neighbors will look scant at them? That's – that is, yes, one of the things that we are talking about. But this was said after he used the gang issues in order to intimidate this jury, in order to make them fearful of the gang problems that these people were involved with, they claimed Mr. Darden was involved with. Excuse me. They claimed Mr. Trillo was involved with, but wasn't. The reason for this is that in the year 2000, the California voters passed Proposition 21. And that proposition is now Penal Code Section 186.22, which is the most erroneous gang enhancement in the entire nation. So it's not fair to say that this continuous monologue by the DA about gangs was not set to intimidate them. Could we go, though – I mean, I think it helps us to look at each of those pieces of evidence individually. So Judge Wallace had asked about this community pressure. Yes. But on that, is my recollection correct that the judge gave a curative instruction when the defense objected? Well, I wouldn't exactly call it a curative instruction. In fact, the judge was very nondescript about everything. When, for example, when the defense objected. What did the judge say when that occurred? Let's see. I'm trying to remember his exact words. I don't know what happened. Oh, yeah. He instructed the jury – well, they were vague. They had no verbal sustaining of any objection. The prosecutor mostly ignored the comments of the court anyway. That's what I remember from my notes. Go ahead. I thought that the judge actually said, overrode that statement to tell the jury in effect to – that that kind of ad hominem – those weren't the judge's words – but in effect that that wasn't appropriate. Well, yes, he did. But he didn't sustain the objection, Your Honor. When the defense objected to it, all he said is that that may be inappropriate. And I think he did use the word may. He didn't at this time sustain the objection. If you don't sustain the objection, it stays into the transcript. It stays into the – for the juries to consider. So, no, we don't feel that the judge gave a curing statement here. Well, the issue – excuse me. Go ahead, Judge Gold. What I recall was the judge giving a limiting instruction on the issue of the membership in the gang, but not on – I didn't recall him giving a limiting instruction on this, your neighbors will look askance at you if you don't convict statement. So am I – am I correct there was no instruction on that? Well, I don't remember one. I was just responding to the judges about that. I don't remember him even doing that. And to be quite frank with you, I don't know what kind of limiting instruction you could have. Well, Judge Gould's recollection is the same as mine. But the issue – I'm not – I don't think that was the thing you ought to do. Whether it's reversible error is not the way you should argue a case. But the probability – the difficulty is that is developing prejudice. That is, if he had not said that, is there a reasonable probability that the case would have come out differently, that is, that the evidence would be that he shot in self-defense? And that's – that's the prejudice prong is the one you have difficulty with on that issue, it seems to me. How could you say that if he hadn't said that, the jury would have found that he shot in self-defense, especially on this record? Well, we know what the jury did do, and he was convicting. And that in itself is a response. They didn't pay attention to this – what the judge said about that. Well, I don't think – I think Judge Gould is correct. The judge said nothing about it. So you have somebody saying your neighbors are going to look askance at you if you buy on to the reasonable probability or conviction beyond a reasonable doubt and let this person walk. Of course that's wrong. I mean, that goes without saying. The judge didn't correct it. No objection was made. So the issue is, had he not made that argument, could we reasonably say that the case would have come out differently? And it seems to me the prejudice prong is the one where you have a problem here. How – how would you argue that had that statement not been made by the – by the prosecution, that the jury would have given him a verdict because he shot in self-defense? Well, I would – I would say this, Your Honor. If we – we have to look at his closing statements as a whole cloth. The prosecutor was very clear and was very strong in his association with Mr. Trillo and with the gangs. In fact, he used the term gangs, gangbangers and gangsters numerous times in that short closing. The point is, is that he was trying to make the jury fearful that this man was part of a larger conspiracy, a larger gang problem that was infesting the State of California. And then he came back and said, what are your neighbors going to think? He wasn't talking about the individual crime. He was talking about this man and his criminal past and his affiliation with gangs. And that's where I feel the jury went. The context is a little different than that. He was arguing against the argument of Defendant's counsel of, you have to prove conviction beyond – you have to prove guilt beyond a reasonable doubt. And it's then that he said, suppose you buy on to that argument, what are your neighbors going to think? So he didn't specify gangs. He specified his argument went to this beyond a reasonable doubt argument. So how do you tie that argument, the specific argument he made, into your gang argument? Well, I'd tie it in because, again, like I said, you have to take it in the whole cloth. He may have said that, but considering what he's – the misstatements he said and the false inferences he was drawing before that would have impacted the jury when he said something like that. What would his neighbors think? About what? About a self-defense argument or about the shooting of this individual? Which Mr. Kittle never denied, by the way. What would they think about that? What are they going to think about if you let the gangs take over California? That's – Counsel, Judge Gould, if I could ask you a question, and I may be using up all your time, so perhaps Judge McKeown could give you some time for rebuttal. We'll give you a little extra. But here's the question I had in my mind was, because his central defense was self-defense and he claimed he'd been stabbed in the back, I guess by the victim, was there no evidence presented to the jury about scars or wounds on his back? What did the jury hear about whether a doctor thought he was stabbed in the back at the approximate time of the, I'll call it the after-party party? I believe there was a witness that testified that my client had been stabbed. No, I understand. I understand that. I'm asking, was there any expert testimony about any scarring on his back or a wound on his back that was healing? In other words, there was a gap as I was reading the record. I couldn't quite understand why we weren't hearing anything about that. In light of the story, I don't know if he could be compelled to submit to an examination, but I'm sure he could voluntarily have a doctor examine his back and give testimony. But was there anything like that? No, there was not, Your Honor. Not that I recall. Okay. So then what is the sole, and this goes indirectly to the prejudice issue that Judge Wallace raised that is on my mind as well. What is the total of the evidence that he, in fact, was stabbed in the back by the victim? Only the testimony of himself and another witness. That was the sole evidence that was brought in at the time. There was no medical evidence at all. Okay. Thank you. All right. We'll hear from the government. Okay. So you have to conclude now because we've let you go beyond your time, but I'm going to give you some rebuttal time. Okay. All right. I'll conclude then. Thank you. Distinguished panel, Victor Trio murdered Aaron Corona. The evidence against him was very strong. His contrived self-defense, very weak. Nothing in the prosecutor or defense counsel's behavior undermined the fundamental fairness or confidence in the result of the proceedings. Did you try this lawsuit below? I did not. Trio is unable to show here that the rejection of his claims was so transparently erroneous that no fair-minded jurist could agree. Turning now to some questions from the Court that I'd like to clear up, the wound was incredible in all regards. First, there was no blood found in the Honda, either by testimony of Mr. Padilla or by the technicians. There was no human material found on the tip of the victim's knife. In defendant's own testimony, the victim was still 20 feet away from him when he was, and he had trouble deciding how he wanted to describe it, so he described it alternatively as being punched, hit, or possibly a small poke. The prosecution expert testified that the wound that Trio had when he was arrested was at most two days old and could not possibly have come from the timing of the events. No friend of Trio's mentioned anything about a stab wound in their initial reports to the police. Trio's testimony was simply completely incredible. He's hit from behind, then he turns around, but no one is there. Searching to explain, he says, maybe it was a hit and run. All the while, we have to remember the victim is still 20 feet away from him at this time. The victim is a person he had met twice before and spoken to at the bar earlier that evening. He was merely walking towards him. Trio says, I assumed he had a knife. His defense was doomed at the outset. Trio and his friends alit from the car in response to swearing. They started fisticuffs. Trio assaulted all present by swearing, firing his gun in the air. The jury was told that persons who are first assailants and or mutual combatants cannot avail themselves of self-defense unless they stop fighting and inform their opponents that they have so stopped fighting. Self-defense was simply not available on these facts. Further, there was evidence that defense witnesses got their story straight. The defense witness, rather, the defense investigator may have been suggesting to witnesses off the record that self-defense would be the theory of the case. The Artiega lady spoke to Trio's house. She called twice. She wrote letters. Also, in the preliminary hearing transcript, which was not before the jury, but it is supplemental excerpt number 10 that was submitted by Petitioner, in that testimony, it shows that Trio was talking to his uncles. But that is not testimony in front of the jury. It wasn't in front of the jury. Let me just, before you go there, I just want to clarify, that wouldn't be testimony that we would be benchmarking prejudice on, unlike the other testimony you just listed. This last bit is about the truth of the statement, Trio's first story was. And it appears that Trio told his cousin, I was fighting when the shots went off. So while the prosecutor's statement about that may have been a misstatement of what was admitted, it was not, in fact, false, because there was a different version. Also, when you look at the gang evidence itself, it was not particularly damaging gang evidence. They were only told about his membership in the gang, not about any predicate crimes, not an explanation of what a criminal street gang was. Further, the criminal street gang evidence was limited. The jury was only allowed to use it for retaliation gang purposes or witness bias purposes, not for bad character or disposition to commit crime. That was in a jury instruction. Go ahead. Go ahead, Judge Wallace. Was that in a jury instruction, or was it in, during the trial that the court made that? Page 1854. And so that looks to me like at the end of the trial. The jury was also instructed that attorneys' comments are not evidence. And they were described as numerous a moment ago, but if you look at the record, the prosecutor said the word gang or gangster about five times in his opening. The defense lawyer said gang or gangster about 31 times in his summation. And then in response, the prosecutor said it about five or six more times. Also, when you look at those references, about half of them by the prosecutor are referring to Mr. Trio's gangster friends and not to Mr. Trio at all. Also, Mr. Trio was allowed to testify that he was no longer in the gang, and there doesn't appear to have been any contradiction of that evidence. Do you want to get to the one that kind of bothers me? That's one of the reasons I ask whether or not you tried this case below. I'm somewhat concerned about this idea of what are people going to say to you if you let them walk. I think it was an unfair statement and an improper statement. So how would you defend it as not being improper? That's my first question. And the second question is, what is the evidence of prejudice that you would argue, that is, that even though it may have been unfair, there was no prejudice in this case? That is, you've got to prove the second prong of prejudice. I would point to the Court to the established authority that statements by prosecutors are not to be viewed in their most unreasonable light, and also point to that there was an objection, and I believe the response by the Court was relate to the evidence. And then the most important part is the prosecutor explained in his second paragraph after the objection that what he meant by it would be that it would be unreasonable for you to vote for not guilty on these facts. And so in that light, and with that further explanation, it shouldn't be viewed as constitutionally violative. And in any event, as for all of the reasons we've been talking about to date, the self-defense in this case was doomed. As a first aggressor, the wound, the prosecution's statement that the wound wasn't old enough, none of his friends mentioned the wound, the incredibility of Mr. Trio's testimony. He was unable to identify the knife at trial. It was unreasonable for him to fear the victim, given the distance and that he knew him. He says at trial, I didn't aim, but the witnesses have him leveling the gun, turning it horizontally and firing. His witnesses were incredibly inconsistent. They told one version to the police and then second versions at the time of trial, and there was evidence that they spoke to each other and got their story straight. So what you're saying is there's no prejudice because the evidence was overwhelming that it wasn't in self-defense. Yes, sir. And with the explanation by the prosecutor that what he really means is that on these facts, it would be unreasonable for you to acquit. And that's what the California Court of Appeal, that's how it interpreted it? Yes, ma'am. I mean, it is, as Judge Wallace says at first blush when he says, your neighbor is going to be like, say what? You know, you acquitted this guy, which is highly objectionable, as we know. But it did seem to me that there was a bit of a pasteover by the court of appeals. It was kind of a tautology. Well, because we know they're only going to convict based on if it's reasonable to convict, therefore, there's not even error, as I understood the California Court of Appeal. Yes. They did not find that to have been misconduct because the explanation by the prosecutor they felt cured and put the statement in a light that would be fair. If he hadn't made that sort of curative, here's what I really mean, statement, we'd have been in a different boat, I think, potentially on the, whether it was error in the first instance, but not in a different boat on the prejudice question. In closing, Trio has failed to explain how it is that every judge to view his claims has been so transparently wrong that no fair-minded jurist could agree. The rejection of his claims should be affirmed here. Now, let me ask you a little time left. Yes, sir. The failure to object issue on the closing remarks, that issue is one that seems to me that I would take a close look at. I thought the prosecutor was pushing this pretty far. There were some objections. But on this last one, there was no objection. When you say the last one, you're talking about his reference to the gang membership? Yes. First, I would posit that counsel had a tactical basis upon which not to object, and that is that the gang evidence had been admitted over his earlier attempts to keep it out. He didn't want to call additional attention to it. Further attention to it. Also, he chose, I thought artfully, to address it in his argument. If you read the defense counsel's argument, he starts out talking about gang and gang membership quite a bit. And then he funnels down to where he sort of stops talking about it and sort of winnows down to this was just a group, sort of like a fraternity. They were nonviolent. And he had evidence in support of that. He had evidence from his client that we were nonviolent. He had evidence from a gang expert that some gang members are nonviolent. So the overall prejudice was low. He had a tactical basis upon which not to object, which was that he had a limiting instruction. The evidence was already going to be admitted whether he liked it or not. So there wasn't really any reason for him to object. The ruling of the trial court admitting the gang evidence was found in the State court to have been erroneous. But that isn't and shouldn't be put on the fault of the prosecutor. The prosecutor pitched, gained a ruling of admission, and then all he was doing was commenting within the parameters of the in limine admission. Thank you. Mr. Sanders, I'm going to give you an additional minute because we did take some of your time up with questions. There's a lot of information in the transcript. We have to see what the prosecutor kept out of the case as well. The motions in limine where he could not bring witnesses in from the other State, the comment about was it worth it, quote, what that meant and how that can be construed to be support the my client's reasonable explanation about my client's self-defense. A lot of these things were kept out. But I want Your Honors to understand that these statements by the prosecutor, particularly the one involving what would your neighbors think, is not just involving two or three sentences. It's involving everything that was said before that. And of course, to ask that kind of question, then they're going to be thinking about who this man is, what his character is like, a character which the prosecutor misled them to believing that he was some horrible gangster that was a threat to the whole community. And that's clear when we look at his closing remarks. And that is the important thing here. We feel that because of that, that those comments can't be taken in isolation. They must be done together. Thank you. Thank you. The case just argued, Trillo v. the California Attorney General, is submitted. And I thank you both for your argument this morning.
judges: Wallace, McKeown, Gould